### NEGLIGENCE—EVIDENCE—CHARGE TO JURY.

[Harrison Circuit Court.]

\* PITTSBURG, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY CO. v. WILLIAM MORELAND.

1. QUESTIONS TENDING TO REFRESH RECOLLECTION OF WITNESS.

In an action against a railway company for personal injuries alleged to have been the result of carelessly placing the plaintiff, a section hand, at work in a place where ice, which had accumulated upon a ledge or an embankment, fell, as a result of the jar of a passing train, which he had stepped aside from the track to avoid, and injured him, the question whether the recollection of a witness, as to what was said by the foreman as to the safety of the place, may be refreshed by an inquiry as to whether or not certain statements were made, is largely within the discretion of the trial judge; and, particularly where the answer could not have been material or prejudicial, his ruling will not be considered by a reviewing court.

2. QUESTIONS EXCLUDED AFTER FULL EXAMINATION.

Where a witness has been examined fully touching the facts in controversy, in case at bar, as to the danger from falling ice, a question, "Was there anything that you could know other than any other workman there knew," was held to have been properly excluded.

---

* Affirmed by the Supreme Court, without report, 60 Ohio St. 604.

*J. Dunbar*, for plaintiff in error, in the Supreme Court, cited:

Contributory negligence: Schaefler v. Sandusky, 33 O. S. 246.

Duty of master as to providing safe appliances: Stewart v. Toledo Bridge Co., 8 Circ. Dec. 454.

Motion to direct verdict: The Lake Shore & M. S. Ry. Co. v. Andrews, 58 O. S. 426.

*D. A. Hollingsworth*, for defendant in error, in the Supreme Court, cited:

A master is bound to inform his servant of all dangers in the service of which he is cognizant, or which, in the exercise of ordinary care, he could have been informed. Swift & Co. v. Fue, 66 Ill. App. 651; Stucke v. Railway Co., 23 So. Rep. 342 [50 La. Ann. 172]; James v. Lumber Co., 23 So. Rep. 469 [50 La. Ann. 717]; Hall v. Murdock, 72 N. W. Rep., 150 [114 Mich. 233]; Rhoades v. Varney, 39 Atl. Rep. 552 [91 Me. 222]; Disano v. Steam Brick Co., 40 Atl. Rep. 7 [20 R. I. 452]; Hill v. Winston, 75 N. W. Rep. 1030 [73 Minn. 80]; Mullane v. Railway Co., 46 N. Y. State, 957; Siedentop v. Buse, 47 N. Y. 809; Chicago Edison Co. v. Hudson, 66 Ill. App. 639; Ashland Coal, Iron & Railway Co. v. Wallace, 42 S. W. Rep. 744 [101 Ky. 626]; Bussey v. Railway Co., 30 S. E. Rep. 477 [52 S. C. Rep. 438].

Railway Co. v. Moreland.

**3. EVIDENCE NOT OBJECTIONABLE AS OPINION EVIDENCE.**

It is competent for the foreman of a gang of section men to testify that the men, while at work on the track, were safe, or whether the ice in falling could have reached them. Such testimony is not objectionable as opinion evidence.

**4. SECTION BOSS REPRESENTS RAILWAY COMPANY.**

The negligence of a section boss in charge of a gang of section men is the negligence of the railway company.

**5. REPETITIONS IN CHARGE TO JURY.**

A charge which correctly submits the case to the jury is not erroneous by repetitions unless they are clearly unnecessary and made for the purpose of emphasis or to influence the decision. If the parties desire more specific instructions upon questions complained of, requests should be presented, and in the absence of such requests the objections are not available on error.

**6. ARGUMENT AS TO SPECIAL REQUESTS IN PRESENCE OF JURY.**

Where special findings, under Sec. 5201, Rev. Stat., are requested, it is the right of counsel upon the other side to make any argument which they see fit, or which the trial judge is willing to hear, as to the pertinency of the questions; and such argument may be made in the presence of the jury.

**7. IMPROPER FOR COUNSEL TO SUGGEST ANSWERS.**

It is improper for counsel, after requests for special findings, under Sec. 5201, Rev. Stat., to make suggestions, under pretense of argument, as to how such questions should be answered. If any direction is given to the jury in respct to special and general findings, how they are to be taken up, etc., they should be instructed that they should find the facts without any reference to who would be injured or helped thereby, and to then draw their conclusions by way of a general verdict from all the facts.

**8. REQUESTS NEED NOT PRECEDE ARGUMENT.**

It is not necessary that the request for special findings, under Sec. 5201, Rev. Stat., should be made before argument; it is sufficient if made afterwards, when no further argument can be made except as to the propriety of the questions.

**9. ANSWERS SUGGESTED TO IMMATERIAL QUESTIONS.**

Where it appeared that many of the questions involved in requests for special findings, under Sec. 5201, Rev. Stat., related to matters which became immaterial or irrevelant under the general charge, and it also appeared that other questions were properly answered, the reviewing court declined to disturb the judgment notwithstanding the fact that the answers to the other questions were suggested by counsel and that the jury obviously followed such suggestions.

**10. REVERSAL AS AGAINST EVIDENCE REFUSED, SEC. 5306, REV. STAT.**

Where it appeared that a section hand was put to work at a point where, near the side of the track, ice had accumulated on a ledge, though without fault of the railway company, and that the employe, while at work, was safe from falling ice, but having stepped to the side of the track to avoid a passing train, was injured by ice which fell as a result of the jarring, such employe having previously suspected the danger, but having been informed by the foreman, after testing the ice, that it was all right, the reviewing court held the facts to be a slim foundation for a verdict against the railway company, but having once reversed a similar judgment in the same case, as against the weight of the evidence, declined to disturb the judgment in view of Sec. 5306, Rev. Stat., providing that "the same court shall not grant more than one new trial against the weight of the evidence against the same party in the same case," which, being passed after the cause of action arose, was not binding on the court, but was followed as an expression of legislative will.

**11. SECTION 5306, REV. STAT., THOUGH NOT BINDING MAY BE FOLLOWED.**

Section 5306, Rev. Stat., providing that "the same court shall not grant more than one trial against the weight of the evidence against the same party in the same case," is not binding in cases which arose prior to its enactment, but the court may be governed thereby as an expression of legislative will.

12. VERDICT NOT EXCESSIVE.

A verdict for $2,500, in favor of a section hand, for the loss of an eye, accompanied by much suffering, is not excessive.

BURROWS, J.

This case comes into this court upon a petition in error from the court of common pleas.

Moreland recovered judgment in the court of common pleas against the railway company for $2,500, as his damages for an injury that is alleged to have been sustained while working as a trackman for the railway company, on February 1, 1891.

At the time of his injury, he was working in a cut just at the west end of what is known as the Bowerston tunnel. This cut is said to be about eighty feet deep. Mr. Solomon Friend was the boss of the section and Mr. Moreland was one of the section hands. At the time of the injury, Mr. Friend. the section boss, called upon Mr. Moreland to come to assist in tamping dirt about ties. The place where he was called to work was opposite an accumulation of ice that was hanging upon the rocks some ten feet distant from the side of the track.

It appears from the evidence that there was no ice higher in this cut than about twenty feet from the level of the track, and that it extended from that height of twenty feet above the track towards the ground, some ten or twelve feet, leaving a space of some eight feet below that was free from ice, or, at least, from any dangerous accumulation of ice.

The undisputed facts show that while Moreland was thus at work, the train approached from the west, going at a slow pace, some six or eight miles an hour, and that when the train was near to him, he stepped off upon the side of the track next to this hanging ice; that while standing there, during the passage of the train, a large piece of ice fell, threw him to the ground and injured his eye and otherwise bruised and injured him; that there was a double track there, or they were just putting in a double track.

The distance between the walls of this cut as shown by the record and considering that two tracks were placed in there, and the distance being given from the track at which he was at work to the wall, it is quite evident that it was something over thirty feet in width, the space, I mean, between the two walls of the cut.

The negligence alleged against the company, which was submitted to the jury for its determination as having some proof to sustain it, was, that the railway company had carelessly placed the plaintiff below at work at a place of danger, known by the company to be a place of danger, and yet known by the plaintiff below to be dangerous, and that when the plaintiff below, having some suspicions as to the dangerous character of that ice, made inquiries of the section boss, he was assured that it was safe for him to work at that place.

The petition alleges that the plaintiff was free from fault. The railway company alleges several grounds of error for which it says that a new trial should have been granted by the common pleas court upon motion. It brings into this court the entire record of the proceedings and alleges that the court erred in not granting its motion for a new trial.

First: There are some complaints made in respect to the admission and rejection of evidence, which we will notice. We notice only those

objections to the admission and rejection of evidence to which counsel for the plaintiff in error has called our attention.

At page 19 of the bill of exceptions, it is said that the court erred in respect to this ruling:

The witness upon the stand at the time is John Clark, a witness for the plaintiff. The conversation between the witness and the section boss is being narrated, something that occurred some two or three days before this accident. He says that he had then told the section boss that he, the witness, Clark, thought the ice was not safe and spoke of this accumulation of ice. There is no objection made to that.

"Q. What did he say to that? A. I don't just remember what he said.

"Q. Did he make any reply? A. I don't remember whether he did or not.

"Q. I will ask you directly this question, whether or not he said to you to never mind or anything of that kind?

"Question objected to by defendant. ·

"Court: I understand the rule to be that his memory may be refreshed by a question of that kind.

"To this ruling of the court the defendant then and there excepted.

"Q. I ask you then to refresh your memory and state to the jury whether or not he replied to you to never mind?

"Question objected to by defendant; overruled; to which ruling of the court the defendant then and there excepted.

"A. I don't just remember. I couldn't say whether he said that or not. I didn't pay very much attention to it after I told him."

There are no comments necessary upon that. It is not necessary even to express an opinion whether the witness's memory might be refreshed in that way. It certainly was a matter largely within the discretion of the court whether that form of question was proper, but the answer elicited is not of the least prejudice or benefit to either party.

The next alleged error of the court is on page 50, and this was the witness, Solomon Friend, called by the defendant below. He is inquired of in respect to what he knew of the condition of the ice:

"Q. What was the condition of the ice, as far as you knew, at the place near where he went to work? A. The ice was, as far as I know, in a safe condition at that point, as much as any other place along the cut.

"Q. You may state whether or not he was entirely safe at the place he went to work as against any ice that did fall there?

"Question objected to by plaintiff.

"Court: That, I think, calls for a conclusion. He may state where the ice was, how far it was from the place he was at work. It seems to me that that is as far as he should go, at least now.

"To this ruling of the court the defendant then and there excepted.

"Court: I think you would be entitled to ask the witness whether the ice could have reached to where this man was at work.

"Question re-read.

"Court: Doesn't that call for an opinion from the witness?

"Dunbar: I think it calls for a fact.

"Hollingsworth: The objection is withdrawn.

"A. As far as the ice is concerned where he was working he was perfectly safe."

Reading the entire answer of the witness, there seems to be no ground for complaint of the evidence as given.

At page 51 there is another exception in the examination of this same witness:

"Q. What is the customary way for men to do when tamping track or surfacing, as you call it, and the train comes along, what did they usually do? A. We stepped back clear of the danger out of the way of the train. If there is any danger any place they are supposed to look out for themselves.

"Plaintiff moves the court to strike out the answer; overruled; plaintiff excepts.

"Q. Do you know of any custom by which men who are surfacing track are instructed where to go upon the approach of the train? A. There isn't any instructions. They are to govern themselves. I am supposed to look out for myself and they are to look out for themselves.

"Latter part of answer stricken out."

There is no objection to it being stricken out and it is impossible to say whether the defendant didn't get all that he asked for, or all that he is entitled to.

Now at page 63 in the re-examination of Mr. Friend:

"Q. Was there anything that you could know other than any other workman working there knew?

"Question objected to by plaintiff.

"Court: I think he has been examined fully upon the subject.

"To this ruling of the court the defendant then and there excepted."

That is the only exception and I think the court was correct. All that he knew about it, and all that he knew the plaintiff knew about it, had already been given to the jury.

The next exception is to the charge of the court. There are but two exceptions to the charge, page 98. The first is, that the court refused to instruct the jury to return a verdict for the defendant, to which exception was taken. We think the court was right in that ruling. There is another exception which I will read:

"Defendant excepts to the instruction given by the court as to the negligence of the section boss being the negligence of the company."

It was given by the court, that under the circumstances, he represented the company, and in that we think the court was right. As far as his jurisdiction went he stood there for the company.

The real objection to the charge is made, that there was a repetition of the proposition that the negligence of the defendant consisted particularly and especially in putting the plaintiff below at work in a place that was dangerous in this, that if a train should come along, as trains were liable to come along at any time, and he should leave his work to avoid the passing train, that he would naturally step into the vicinity of this hanging ice, which was dangerous; therefore he was put into a place of danger, of unusual danger, to perform his duties as trackman without any knowledge on his part of its dangerous character, and knowledge on the part of the company that it was dangerous.

We think the court submitted the proposition correctly and we are not able to see that it was repeated unnecessarily for the purpose of emphasis or for influencing the decision of the case. If the defendant below desired the court to more particularly state to the jury in his charge the necessity of knowledge on the part of the railroad company or that the condition of things was such that they, in the

exercise of ordinary care, ought to have apprehended the fall of this ice, and those things that constituted the negligence of putting him at work there, then counsel for the defendant should have asked the court to charge upon this proposition. No such request was made and we find no error in the charge of the court as made.

Another alleged ground of error is, that counsel for the plaintiff was permitted, by way of argument, as it is said, or conversation, to converse with the jury, or argue to the jury, with respect to the answers that would be suitable ones to return to the special verdict. It is called by counsel for the plaintiff in error, instructions of the jury by counsel.

This is rather a novel proceeding to me and we have been referred to no authorities of any court in this state or elsewhere upon the question.

The law regulating special verdicts is found in Sec. 5201, Rev. Stat., as amended in 1894.

"In all actions the jury, unless otherwise directed by the court, may, in its discretion, render either a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues, and in all cases when requested by either party, the court shall instruct the jurors, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon, and the verdict and finding must be filed with the clerk and entered on the journal."

It will be observed that it is not every question that may be asked that shall be submitted to the jury by the court, nor a special verdict required in respect to any question that counsel see fit to put in writing and hand to the court; but it is only upon any or all of the issues of fact. Whenever counsel ask the court to have any particular issue of fact or all of the issues of fact found specially by the jury, it is the duty of the court, under this statute, to direct the jury to so find.

The question then, is whether a party requesting the court to have a special finding of the facts of a case, is subject to criticism before the jury for having done so; consequently, whether the counsel upon the other side have a right, under the pretense of argument of the case, to suggest to the jury how they can answer the special questions so as to make it conform to their side of the case.

We are of the opinion that it was the right of the counsel upon the other side to make any argument they saw fit to the court, or that the court was willing to hear, as to the pertinency of these questions; that might be done in the hearing of the jury.

In this case it would have been entirely proper for counsel to have submitted to the court that several of these questions did not call for a special finding as to any fact that was in issue in this case. It is not known, of course, until the court charges the jury, which of the questions will be submitted for them to answer as a special verdict or whether any of them will be submitted. It is difficult to see how it is a question of specific direction or suggestion to the jury of how they had better answer these questions. We think counsel have no such right to make suggestions as to how they had better answer the questions. How the facts are and what the evidence shows with respect to those facts, is a matter for discussion and argument. It is a fact that may be urged upon the jury as being proved that the legitimate inference from these facts is as claimed by counsel; that the ultimate facts to be

inferred from these particular facts are of such a nature that it would be arguing the case; but how can it be said to be arguing the case to take up a question that is submitted for the purpose of being answered by the jury as part of their verdict and say, "I don't know, gentlemen, how you will answer that; you might answer it one way or the other, but if I were you I would answer it this way." Certainly it would be improper for the court to make any suggestion how they had better answer, except to tell them to answer according to the evidence and the truth.

This court had before it a case in which the common pleas court directed the jury that it would be well for them to find their general verdict first and then their special verdict might be investigated and decided upon, thereby indicating that it would be well enough for them, if they came to a conclusion upon the general verdict to make the special findings correspond with the general one. We reversed the case upon that ground as being a misleading direction to the jury.

If any direction was to be given to the jury in respect to the special and general findings, how they are to be taken up by them, the jury should be instructed that they should find the facts without any reference to who would be hurt or helped by such findings and then draw their conclusions by way of a general verdict from all the facts.

That this would be very prejudicial to the average jury in the average case, where able counsel is allowed to suggest answers, is pretty evident. We need not go out of this record to find that it is so. The jury seem to have followed the suggestions of counsel for the plaintiff below in respect to their answers, and the suggestions of counsel below were not proper; in substance, the suggestions were to avoid making a direct answer.

It may be that this case ought to be reversed, possibly may be, because the jury failed to return a verdict at all, having failed to answer specifically and categorically these questions.

Now, I have said that there are two prejudicial matters here that the court ought to have given some attention to. The first was the insinuation that there was something wrong on the part of the railroad company in suggesting to the court, or requesting the court, to have a special verdict in the case; and the record shows that this request was made before argument of the case had commenced. As I just read from the statute, it was not necessary that it should have been presented to the court then; it would seem to be sufficient if it was requested after the argument was closed, after counsel's mouth was closed in respect to the argument of the case, except argument to the court as to the propriety of the questions.

This record shows that it was suggested to the jury that it was a sort of a trick to entrap the jury, to have questions presented without letting counsel on the other side know that the special verdict was to be demanded. Now, let us see whether the jury were probably influenced by these suggestions.

The first question was this: "Was the train approaching from the west running at a high and dangerous rate of speed?

"Defendant objects and excepts to this.

"Hollingsworth: Dunbar, don't jump at me as you do at a witness.. In my judgment, from the proof as elicited from the witnesses, both for the plaintiff and the defendant, that answer should be substantially as follows:

"No, if the conditions were ordinary, but with the conditions as they were, considering the condition of the ice, it was dangerous."

This is the answer the jury returned: "No, if the road and surroundings were in proper condition."

Now, what does the answer amount to? It amounts to this. That the train was running at a high and dangerous rate of speed, considering the surroundings and conditions of the road. It is difficult to see what the jury meant by it. Apparently they simply, parrot-like, re-echoed the suggestion of counsel.

It is said by counsel for the plaintiff below, that this was a very intelligent jury; that they made very intelligent answers. I think too much credit is given to the jury. They seem to have originated nothing; the intelligence simply came from counsel, and the only intelligence they exhibited, as far as the record shows, was remembering what counsel suggested the answers should be.

But, there is another difficulty about this, that prevents our making a decided ruling upon the question of the conduct of the court in not stopping this sort of conversation or taking the jury into his confidence as to what they should do in the jury room after they had gotten in there.

Take that first question. It wasn't properly answered, but why was it put? Perhaps because the court hadn't then charged the jury, and counsel for the railroad company were not advised as to what the charge of the court would be. But the court charged the jury that the way that the train was managed was not a fact for their consideration, for there was no proof upon the subject, and looking into the petition we find that it is not charged, even, that it was running at a high and dangerous rate of speed. So, that that wasn't one of the facts in issue for the jury to consider; it was entirely immaterial what their answer was upon that question. It wasn't a fact in issue.

Now, without going through all these questions, there isn't more than one or two that suggested to the jury the finding of any fact specially that was in issue in this case under the charge of the court.

Take the second: "When Moreland could first see the train approaching, did he have sufficient time to reach a place of safety?"

Counsel suggested to the jury that they had better answer, "Yes, if it had not been the custom of the company for him to remain there until the train got close by and then step back out of the way."

Now there was no controversy about the facts. He testified himself that he could see the train in ample time, running at the speed it was, to have gone across that track a half dozen times, but the custom was, as suggested by counsel, to keep at work as long as they could with safety to themselves, not leaving their work as soon as the train came in sight.

The answer of the jury to this question was, "Yes, if he had known of danger."

Now that is no answer. Known of what danger? Danger of ice, or of the train, or because he hadn't sufficient time to reach a place of safety? The jury hasn't said so. It was only that he would have had time if he had known of danger.

Third. "Was the speed of the approaching train so great as to render it impossible for Moreland to cross the track to a place of safety?"

There was no question about the speed of the train left to the jury by the charge of the court. No question in the petition and the proof

left it in no doubt but what he had ample time. The answer of the jury was, "No, if he had started in time."

If the train had been five miles off when he saw it the same answer would have applied. I don't wish to have to charge counsel with having suggested that, but I guess it will be necessary to charge counsel with it. The answer counsel suggested was, "No, not if he started soon enough." So that it was simply the suggestion of counsel that they should not make a correct, proper and direct answer to the question.

Fourth. "Is tamping ties a dangerous employment?"

That is not an issue in this case and ought not to have been submitted to the jury. Still the suggestion was made by counsel that they should answer in this way: "No, if you have a safe place in which to tamp them." So the jury answered, "No, if the surroundings are safe." So the court couldn't know, in entering the verdict, if there was an issue in the case, whether tamping ties is a safe business or not. They might as well have answered, "sometimes it is, sometimes it isn't."

Fifth. "Was the work being performed by Moreland more hazardous than the work being done by the other members of the section gang?"

That is not an issue in this case, no part of any issue in this case, but still it is answered in this way: "No, had he been on the same side of the track." The suggestion by counsel was that they should answer thus: "No, if he had been on the same side of the track."

Sixth. "Was the ice which had accumulated on the south wall of the cut there from natural causes? Yes."

Seventh. "Did Moreland have knowledge of its presence prior to the accident? Yes." Counsel suggested, "He had knowledge that there was ice at that point but no knowledge that it was in a dangerous condition or liable to fall by the passing of the train."

Eighth. "Was Moreland aware of the nature and character of this ice prior to the accident? Yes, of the physical nature, but not of its dangerous condition." That is a fact that was in issue in this case, whether Moreland was aware of the nature and character of this ice prior to the accident and the answer is fairly made.

Ninth. "With his knowledge of the ice being upon the wall, did Moreland stand under it? No, he stood close by."

Tenth. "Could Moreland have avoided standing there? Yes, had he known of its danger."

But in ignorance of the danger he could not have avoided standing there. Well, it was a question which ought not to have been asked. There was nothing for the jury to determine about it. It was an admitted fact that he could have avoided standing there. The plaintiff below himself testified that he could have gone to the other side, gone the other way and had plenty of time to do so.

Eleventh. "Could Moreland have stepped to the east of this mass of ice and have avoided being injured?" That wasn't a matter in dispute at all; the answer was, "Yes, had he known of danger." Of course he couldn't have done it unless he had known of danger.

Twelfth. "Could Moreland have stepped across the track to the north and avoided injury? Yes, had he known of danger."

Counsel said to the jury that these questions ought to be answered the same way and they were. Now, there was no dispute about them. They were conceded facts.

Railway Co. v. Moreland.

So with the thirteenth, which counsel says is the unlucky number by which he hopes to catch the jury.

Thirteenth. ''Was Moreland injured at the place where he was sent to work by the foreman, or at a place he had voluntarily selected to avoid the passing train?'' That wasn't a question in dispute. He wasn't hurt at the spot where he was at work. Nobody claimed that. The petition claimed he wasn't there at the time; the evidence in the case showed that he was there.

The answer was, ''He was injured where he was standing while the train was passing.'' That is to say, he was injured where he was injured. The question whether he was injured at the spot where he was set to work, they didn't answer, except in that way.

Now we find here but one question that was proper, perhaps, to be submitted to the jury as a basis for the action of the court, and that one having been properly answered, we think we will pass this matter by.

So we do not find, under the circumstances, that the defendant below was prejudiced so as to call for a reversal of this case. Whether it would have been reversed otherwise or not, we make no further admissions.

The only remaining question in this case is, that the verdict is excessive and against the evidence. We are unable to see how we could base an opinion, upon this record, that it is excessive. If the jury believed the statement of the plaintiff below, he was severely injured, permanently injured, a substantial loss of his eye and much suffering, and bruises, etc, etc. That contention cannot be sustained.

Now, as to the verdict being against the weight of the evidence. This case has once before been reversed on substantially the same evidence, as not being supported by sufficient evidence.

Here was an accumulation of ice without the fault of the defendant. It is alleged in the petition that there was a ditch running along the top of the hill and that the ditch was out of repair, throwing the water down the side of this cut, and that the accumulation of ice was there by reason of this ditch being out of repair. There was no proof to support it. The court took that question from the jury wholly, so that it leaves the case without fault of the defendant as to the accumulation of ice.

The fair inference from the evidence is that at the top of this ledge of rocks, some twenty feet above the surface of the railroad, water seeped out under the soil and ran down the side of the rock. It was springy there. In cold weather, trickling down there, it congealed and large masses of it formed, not alone at this spot, but upon that side for several hundred feet, where substantially the same conditions obtained. If it was not any fault of the railway company in the ice being there, as to their workmen, the fault would be in not removing it. These very workmen would be called upon to remove it. It would be one of the duties that they would be called upon to perform, in looking after the track and its surroundings, it would be one of the hazards that they assumed in doing that work, if the railway company would attempt to remove it.

Now, it is quite evident that the plaintiff wasn't guilty of negligence; he has to work where the section boss sent him to work; that large mass of ice hanging there, twenty feet above him, caused some apprehension on his part. It is not denied but what he called the

attention of the boss to it and says, "Is this safe to work here ?" It is not strange, as an intelligent workman, he was apprehending danger from this large accumulation of ice at that spot. The section boss gave it as his opinion that it was safe, referring to the fact that he would be safe at that particular spot where he was at work.

Now, the section boss and Mr. Moreland, each of them, had in mind simply the fact of the falling of the ice where he was at work. They were not apprehending any danger from the passing train, of having in contemplation that the train was going to pass. I don't see how Moreland could be charged with any fault whatever; as to him it was purely an accident. The only question is, whether any fault could be charged to this railway company. There was ice hanging there. It was melting some that day, the water was trickling down and Mr. Friend went there and examined it and tried it with the handle of his shovel or some other instrument and it seemed to be firm. Nobody, no expert could have told whether it was slipping on the rock or not, or whether, if it did slip, it would slip down the rock, or whether it would be first loosed at the top and fall from the top. Had it so fallen, he would have been in danger where he stood at work. The result showed that it slipped down and didn't fall on the track. It was liable to fall either of these ways. When Friend told Moreland that it was safe, he meant he didn't think it would fall, and Mr. Moreland knew at the time that Mr. Friend didn't know anything more about it than he did, except he had gone there and pounded at it, pried on it to see whether it was loose.

Now, really, when you look at this case and consider it as a question of negligence or want of duty between these two employes, one the superior and one the inferior, were either of them guilty of negligence? What more could Friend have done than to make the test he did make? He appeared to want to make everything as safe as he could for his subordinates, made all the test within his power, apparently, to see whether that ice might fall and by peradventure hit one of the workmen. What more would be demanded of him?

If it was a matter between a farmer and one of his hired men, and, under the same circumstances, the farmer took the same precaution to see whether something would fall or not, would anybody suppose the farmer was guilty of any negligence in not doing something more?

They were both employes of the corporation. A corporation must do its work by employes, one the superior of the other. Was it one of those ordinary hazards that the employe assumes in entering into a dangerous employment? Was it not?

The case would seem to be resting upon a pretty slim cord. Yet, this case has been reversed once because of the fact that the jury ought to have found a verdict upon this evidence against the defendant. *Ante*, p. 604. It is not enough that the jury may be able to say from the evidence that the accident did occur by reason of the fault of the defendant below. It is not enough for them to be able to say that they didn't know whether the railway company or the defendant below was guilty in any case, of negligence or not. They must find affirmatively, under the evidence, that there was neglect of duty. It is very questionable whether that neglect of duty appears here affirmatively in this record.

It is suggested to us that this court is not authorized, in view of a late statute, to reverse a case by reason of the verdict being against the evidence but once. We are not able to ascertain what that law is from the brief printed in reference to it. All we have here is Sec. 5306, provid-

Railway Co. v. Moreland.

ing, that "the same court shall not grant more than one new trial on the weight of the evidence against the same party in the same case "

· When it goes into effect does not appear here or whether it repeals Sec. 5306, Rev. Stat., as it then stood in the statute book, does not appear, but we can guess that it is an addition to what was there before; that this is Sec. 5306a.    No time was fixed when it should go into effect, therefore this law went into operation May 1; by Sec. 69, Rev. Stat., it would not affect cases pending unless the statute itself made it apply to cases pending.

But that isn't all there is of it.    The matter of granting new trials is a matter of statute in our s·ate.    It is a matter of common law and it has been ruled in England time immemorial that a new trial can be granted only in certain cases.   The verdict of a jury can only be reversed for insufficient evidence, I think, three times.   Our statute has provided for a great many years that the verdict may be set aside as being against the weight of the evidence upon motion for a new trial without any limitation as to the number of times.

Now, the legislative policy has been expressed that it is improper practice to grant more than one new trial in the same case on account of insufficiency of the evidence.   The policy, as expressed by the people through their legislature, is that the verdict of the jury rendered in a case where the evidence is insufficient, but some evidence to sustain the case, may be reversed once and once only.   While it isn't legally binding upon this court, it is the policy expressed by the legislature, to which we yield respect.

On the whole, we find no error in this record by which the judgment should be reversed and the same is affirmed with costs, no penalty.